IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**STANLEY N. HATCH,** and                               Civ. No. 99-0143 LH/LCS

**HATCH, ALLEN & SHEPARD, P.A.**

    Plaintiffs,

vs.

**LAWYERS TITLE INSURANCE**

**COMPANY,**

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on the Defendant's Objections to Plaintiffs' Interrogatories and Requests for Production, filed on May 21, 1999. The Court, having considered the pleadings, the memoranda submitted by the parties and the applicable law, finds that the Objection is not well taken and should not be granted.

### Discussion

On or about June 14, 1996, Defendant Lawyers Title Insurance Company ("Lawyers Title") issued an owners' insurance policy to Cottonwood Corners ("Cottonwood"), a New Mexico limited liability company, and a loan title insurance policy to Comerica Bank of Texas ("Comerica"). A Deed of Trust dated June 7, 1996, which named Lawyers Title as trustee for Comerica, created the first mortgage lien on the real property, was given as security for a promissory note from Cottonwood.

On June 14, 1996, Plaintiffs Stanley N. Hatch and Hatch, Allen & Shepard, P.A.

("Hatch"), an attorney and his law firm acting as counsel for Cottonwood, wrote an opinion letter concerning the loan Cottonwood obtained from Comerica. In the opinion letter, Hatch stated that Cottonwood validly existed and was in good standing under the laws of New Mexico and that "we have no current actual knowledge of any further approval of or consent from any governmental authority, or any other person or entity, is required in connection with the execution of the loan documents." Before sending the letter, Hatch was contacted by attorneys representing Dorothy and Rolfe Black ("Blacks"), proposed partners in Cottonwood, concerning the Blacks' objection to the conversion of Seven Bar Partners, a New Mexico limited partnership, into Cottonwood.

In 1997, after Cottonwood had obtained the loan from Comerica, the Blacks filed a *lis pendens* on the real property and a suit against various individuals and entities, including Cottonwood and Comerica ("Black lawsuit"). Lawyers Title provided a defense for Cottonwood and Comerica in the Black lawsuit and claims to have spent approximately $411,939.40 in settling the claim (approximately $259,512 in attorney's fees and costs on behalf of Cottonwood, $64,688 in attorney's costs and fees on behalf of Comerica, and $85,200 in settlement to the Blacks).

The present dispute arose after the settlement with the Blacks. Lawyers Title threatened Hatch with a suit for negligent misrepresentation and malpractice stemming from its June 14, 1996, opinion letter. Lawyers Title claimed that Hatch's issuance of the opinion letter was negligent and that the opinion letter was the cause of the Black lawsuit. Lawyers Title sought the amounts paid to the Blacks in settlement of their claims as well as the attorney fees and costs it incurred on behalf of Cottonwood and Comerica in the Black lawsuit. In response, Hatch filed

suit seeking a declaratory judgement of non-liability.

On April 19, 1999, Hatch served Lawyers Title with discovery requests that included requests for communication and documents relating to the Black litigation, the underlying lawsuit to this action. Lawyers Title issued a blanket objection to the requests. Generally, failure to provide a detailed privilege log as described in Federal Rules of Civil Procedure 26 (b)(5) "subjects the [objecting] party to sanctions under Rule 37(b)(2) and may be viewed as a waiver of the privilege or protection." FED. R. CIV. P. 26 (b)(5) cmts. to amendments (1993). However, the Court does not view Lawyer's Title's failure to provide a privilege log as subject to sanctions or as a waiver of privilege or protection because both parties to the present suit agreed to postpone the creation of a privilege log until the Court made a general ruling on the discovery issues in controversy.

In the absence of a privilege log, the Court hesitates to make a broad ruling and will consequently allow further argument on specific communications or documents if the parties to this suit believe they fit an exception to the general ruling. Additionally, any ruling the Court makes extends only to the parties to this action and to the discovery of documents and communications prepared by or received by the parties to this action. The ruling does not extend to the discovery of documents and communications prepared by or received by the parties to the underlying lawsuit over whom this court has no jurisdiction.

When a malpractice claim is asserted, ordinarily privileged documents and communications made during the underlying action may lose their status if they are relevant to the claim or defense. <u>Nat'l Excess Ins. Co. v. Civerolo, Hansen & Wolf</u>, 139 F.R.D. 398, 400-401 (D. N.M. 1991). If a party makes protected information relevant to the case by putting it at issue

3

by an affirmative act, and the application of privilege would deny the opposing party information vital to their defense, the court will deem that the party asserting the privilege has impliedly waived privilege through its own affirmative conduct. Hearn v. Rhay, 68 F.R.D. 574, 581 (E.D. Wash. 1975). As explained in Hearn, a court should find that privilege has been waived when the following three conditions are met: "(1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense." *Id. See also,* Edna S. Epstein, *The Attorney Client Privilege and the Work-Product Doctrine*, 209-210 (3d ed.1997).

    All three conditions of the Hearn test are met in the present case. First, Lawyers Title took affirmative acts by making claims against Hatch. Second, by claiming that the underlying Black lawsuit is the result of Hatch's negligence and by seeking damages from Hatch as subrogee for settlement costs and attorney fees for the Black lawsuit, information about the costs and fees incurred in the underlying lawsuit has been used offensively and is put at issue by making it relevant to the case. Third, preparation of Hatch's defense will include assessment of the reasonableness of the damages sought and assessment of the validity of their role, if any, in the Black lawsuit.

    In response to Hatch's request for information regarding the Black litigation to prepare its defense, Lawyers Title claims, *inter alia*, that privileged information regarding the Black litigation is not relevant to Hatch's defense. Arguing that the underlying litigation is not the Black lawsuit but rather Hatch's opinion letter, Lawyers Title reasons that advice it received from other

attorneys regarding its handling of the Black lawsuit is protected by privilege. The Court disagrees. But for the Black litigation, Lawyers Title would not be a party to the present case or seeking damages and attorney's fees from Hatch as a result of the Black litigation. It only follows that the Black litigation is the underlying litigation to the present case and that information regarding the handling of the case up until its settlement is relevant to Hatch's defense. "[I]t would be unfair and highly prejudicial to permit [Lawyer's Title] to sue . . . for malpractice, yet simultaneously conceal documents which have a direct bearing on" that malpractice. *Bieter Co. v. Blomquist,* 156 F.R.D. 173, 179 (D. Minn. 1994).

Citing *Skaggs v. Conoco, Inc.*, 957 P.2d 256 (N.M. App. 1998), *Home Indemnity Company v. Lane, Powell, Moss and Miller,* 43 F.3d 1322 (9th Cir. 1995), and *Frontier Ref., Inc. v. Gorman-Rupp Co.*, 136 F.3d 695 (10th Cir. 1998), Lawyers Title claims that it is unnecessary for Hatch to discover privileged information regarding the reasonableness of the damages sought to prepare their defense because Lawyers Title will not be relying on this information to prove causation and because Lawyers Title's employees and other witnesses to the Black lawsuit are available to testify on this issue. The Court is not convinced by Lawyers Title's argument for the following reasons. First, by seeking reimbursement for the Black litigation, Lawyers Title put legal advice and fee information it received directly in issue and made such information vital for determining the voluntariness and reasonableness of the settlement. Accordingly, privileged material has become inextricably merged with Hatch's defense. *See Hearn*, 68 F.R.D. at 582. Second, unlike the cases in *Skaggs, Home Indem.,* and *Frontier Ref.*, in which discovery requests were denied because there was sufficient objective evidence that proved it was not necessary for the defendant to rely on privileged communications, the record in the present case does not

5

indicate that the Black lawsuit was settled without reliance on privileged communications. Consequently, the Court is left to infer that Lawyers Title will not be using privileged information to support their claim because it does not want Hatch to review information vital to their defense. Such use of privileged information can only be described as offensive. The privileged information about the cause and costs surrounding Lawyers Titles' role in the underlying Black lawsuit is necessary for Hatch to prepare their defense and, therefore, meets the third condition of the *Hearn* test. Moreover, because privileged materials inhere in the controversy itself, "to deny access to them would preclude the court from a fair and just determination of the issues." *See Hearn,* 68 F.R.D. at 582. Accordingly, Defendant's objections will be denied.

IT IS THEREFORE ORDERED that Defendants provide by August 15, 1999, the information and documents specified in the Plaintiffs' Interrogatories and Requests for Production which were ruled upon herein, subject to objection on individual items for which a privilege log is prepared.

_____
Leslie C. Smith
UNITED STATES MAGISTRATE JUDGE